UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES SECURITIES AND EXCHANGE )
COMMISSION, )
    *Plaintiff*, )
) 1:00-cv-1265-JMS-TAB
*vs.* )
)
KENNETH R. PAYNE, *et al.*, )
    *Defendants.* )

## ORDER ON MOTION FOR SUMMARY JUDGMENT AGAINST DANIEL G. DANKER

Presently before the Court is Plaintiff United States Securities and Exchange Commission's ("SEC") Motion for Summary Judgment as to Defendant Daniel G. Danker. [CM/ECF dkt. 22.][1] At this time, the Commission requests that the Court grant it summary judgment on liability and issue a permanent injunction against Mr. Danker from making misrepresentations of fact in connection with the sale or distribution of registered and unregistered securities.

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would, as a matter of law, conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial...against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529,

---

[1] Since the time this case was filed in 2000, the Court has implemented the CM/ECF electronic case management system. In September 19, 2005, the Court ordered that all future filings be through the CM/ECF system. [CM/ECF dkt. 1-1.] Filings made before that date are stored on the JAMS docket and will be cited to as "JAMS dkt. __", while filings made after that date will be cited to as "CM/ECF dkt. __."

533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial and cannot rely upon the mere allegations or denials in the pleadings. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 317. Moreover, the non-moving party must do more than just demonstrate a factual disagreement between the parties; it must demonstrate that the disputed factual issue is "material." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). Therefore, in what follows, the Court makes all reasonable factual inferences in favor of Mr. Chastain. *See* Fed. R. Civ. Pro. 56(c).

## BACKGROUND

In August 2000, the SEC filed this civil action against multiple individuals, including Mr. Danker, because of a Ponzi scheme operated through Heartland Financial Services, Inc. ("Heartland") in the late 1990s. *Knauer v. Jonathon Roberts Fin. Group, Inc.*, 348 F.3d 230, 231 (7th Cir. 2003). Mr. Danker was Heartland's vice president and office manager. *Id.* The facts presented by the Seventh Circuit Court of Appeals regarding a lawsuit between Heartland's court-appointed receiver and several broker dealers provides the context for the SEC's civil action against Mr. Danker:

> Heartland Financial Services, Inc., and JMS Investment Group, LLC, operated a Ponzi scheme in the late 1990s that collected over $ 60 million from hundreds of investors. In August 2000, in connection with a Securities and Exchange Commission action against individuals and entities involved in the Ponzi scheme, the district court appointed James A. Knauer as receiver for Heartland and JMS.
>
> ***
>
> Kenneth R. Payne founded Heartland Financial Services, Inc., in January 1991 and served as its president. From 1994 to as late as August 2001, Heartland, together with JMS Investment Group, LLC, which was founded in 1997, and other affiliated companies, engaged in a massive fraud, holding themselves out as

brokerage, insurance and estate planning firms and raising millions of dollars through fraudulent sales of securities. Working with Payne in this business were Daniel Danker, Heartland's vice president and office manager, Johann M. Smith, founder, manager and attorney for JMS, and Constance Brooks-Kiefer, an administrative assistant who worked for both JMS and Heartland. Their operation was a classic Ponzi scheme. Investors were promised extraordinarily high rates of return, which in the beginning were realized, for the purpose of encouraging greater reinvestment. By 1998, Heartland had over 700 clients, who had invested $ 22.6 million with the company. Between December 1997 and December 1999, JMS raised $ 18.5 million from over 250 investors. Altogether, the two companies and their affiliates collected over $ 60 million. In reality, Heartland and its affiliates did not invest most of the funds at all, but Payne and his colleagues withdrew and spent the money for their own personal benefit.

***

On August 10, 2000, the SEC moved for, and the district court granted, a temporary restraining order against Payne and Danker.[2] As part of the proceedings, the district court removed Payne, Danker, Smith and Brooks-Kiefer from control of Heartland and JMS and appointed James A. Knauer as receiver for the two companies.

*Knauer*, 348 F.3d at 231-32.

In March 2001, Mr. Danker pled guilty to two counts of mail fraud and one count of money laundering. [CM/ECF dkt. 23-3.] In July 2001, he was sentenced to 71 months in prison and ordered to pay $27,295,680.76 in restitution. [CM/ECF dkt. 23-4.]

In this civil enforcement action, the SEC alleges six counts of violations of the Securities Act, the Exchange Act, and Rule 10b-5 against Mr. Danker.[3] [CM/ECF dkt. 23-1 at 13-19.] The Complaint alleges that Mr. Danker, working through Heartland and JMS Investment Group, LLC ("JMS"), violated and aided and abetted violations of the federal securities laws by defrauding more than 330 investors in thirteen states through the sale of investment opportunities.

---

[2] This is the SEC's civil action.

[3] Mr. Danker did not file an answer to the SEC's Complaint and a default entry was entered in December 2000. [JAMS dkt. 81.] Default judgment was never entered as to Mr. Danker. The SEC does not address how the default entry affects its motion, other than to argue that the facts alleged in its Complaint may not be contested. [CM/ECF dkt. 23 at 3 (citing *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994)).]

[CM/ECF dkt. 23-1 at 1, 6.] Specifically, the Complaint alleges that Mr. Danker offered and sold investment opportunities in (1) the initial public offerings of financial institutions and internet and technology companies represented by units of JMS; (2) shares in an offshore bank located in Belize; and (3) units of Heartland. [CM/ECF dkt. 23-1 at 6.]

Heartland was held out to be a broker-dealer and accepted money from customers to purchase unit investment trusts, money markets, and mutual funds. [*Id.*] Regardless of the investment opportunity selected by an investor, most of the investor's funds were deposited into a non-interest bearing bank account in the name of Lincoln Fidelity Escrow (the "Lincoln account"). [CM/ECF dkt. 23-1 at 6, 11.] From March 1999 through April 2000, $28,200,000 million was deposited into the Lincoln account. [CM/ECF dkt. 23-1 at 11.] Approximately $1,800,000 of this amount was used to purchase legitimate securities. [*Id.* at 12.]

In October 2010, the SEC moved for summary judgment against Mr. Danker. [CM/ECF dkt. 22.] The SEC asks the Court to grant summary judgment and enter a final judgment against Mr. Danker that includes a permanent injunction.[4] [CM/ECF dkt. 23 at 16.]

## DISCUSSION

The SEC argues that it is entitled to summary judgment on Counts II through VI of its Complaint because Mr. Danker pled guilty to the underlying allegations and is collaterally estopped from relitigating those issues. The SEC argues that it is entitled to summary judgment on Count I because undisputed facts confirm the underlying allegations that Mr. Danker violated the Securities Act by selling and attempting to sell, through the use of the mail or interstate commerce, unregistered interests in JMS.

---

[4] The SEC does not request disgorgement or civil penalties at this time. [CM/ECF dkt. 23 at 16 n.4.]

Mr. Danker did not file a response to the SEC's summary judgment motion.[5] Mr. Danker's failure to specifically controvert the SEC's supported facts with his own facts supported by admissible evidence means that the Court will assume for purposes of this motion that the SEC's facts "are admitted to exist without controversy." L.R. 56.1(e); *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (moving party's factual assertions treated as uncontested when a non-movant "failed in his obligation to respond with particularity to the statement of material facts submitted by the [movant]"). Entry of summary judgment, however, is not automatic and may be granted only when the undisputed facts lead to judgment as a matter of law. *Wash. Int'l Ins. Co. v. Bucko Constr. Co.*, 2007 U.S. Dist. LEXIS 60914 *6 (N.D. Ind. 2007).

### I. Collateral Estoppel on Counts II through VI

Counts II through VI of the SEC's Complaint allege that Mr. Danker violated Section 17(a)(1) of the Securities Act (15 U.S.C. § 77q(a)(1)), Sections 17(a)(2) and (a)(3) of the Securities Act (15 U.S.C. § 77q(a)(2) and (a)(3)), Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)), Rule 10b-5 (17 C.F.R. § 240.10b-5), Section 15(a)(1) of the Exchange Act (15 U.S.C. § 78o(a)(1), Section 15(c)(1) of the Exchange Act (15 U.S.C. § 78o(c)), and Rule 15c1-2 (17 C.F.R. § 240.15c1-2). All of these provisions prohibit the use of manipulative and deceptive practices in the offer, sale, or delivery of any security or aiding and abetting manipulative and deceptive practices in the offer, sale, or delivery of any security. [CM/ECF dkt. 23 at 10, 12.]

Federal preclusion law determines the preclusive effect of a federal criminal proceeding. *Instituto Nacional De Comercializacion Agricola v. Continental Ill. Nat'l Bank & Trust Co.*, 858 F.2d 1264, 1271 (7th Cir. 1988); *SEC v. Black*, 2008 U.S. Dist. LEXIS 75812 (N.D. Ill. Sept. 24, 2008). In general, collateral estoppel precludes relitigating issues when 1) the party against

---

[5] The SEC sent the notice required for pro se cases pursuant to Local Rule 56.1(h) the same day it moved for summary judgment against Mr. Danker. [CM/ECF dkt. 24.]

whom the doctrine is asserted was a party to the earlier proceeding, 2) the issue was actually litigated and decided on the merits, 3) the resolution of the particular issue was necessary to the result, and 4) the issues are identical. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988) (citation omitted). In other words, "one fair opportunity to litigate an issue is enough." *Id.*

In the Seventh Circuit, collateral estoppel may be applied in civil cases to issues previously determined in a criminal conviction. *Appley v. West*, 832 F.2d 1021, 1026 (7th Cir. 1987). A criminal conviction based on a guilty plea "conclusively establishes for purposes of subsequent civil proceedings that the defendant engaged in the criminal act for which he was convicted." *Nathan v. Tenna Corp.*, 560 F.2d 761, 763-64 (7th Cir. 1977); *see also Ermenc v. United States Internal Revenue Serv.*, 1992 Bankr. LEXIS 2512, *7-9 (N.D. Ind. 1992) ("The fact that the Debtor plead guilty to tax evasion . . . which resulted in a federal criminal conviction, rather than the criminal conviction arising out of a trial on the merits, does not preclude this Court from giving collateral estoppel effect to that criminal conviction in a subsequent [civil action].").

The SEC alleges that it is entitled to summary judgment on Counts II through VI of its Complaint because Mr. Danker's criminal convictions conclusively establish the elements of those counts. [CM/ECF dkt. 23 at 10-15.] The SEC designated Mr. Danker's criminal information, guilty plea, and criminal judgment to support its argument. [CM/ECF dkts. 23-2 to 23-4.]

The Court agrees with the SEC that Mr. Danker's criminal convictions conclusively establish the elements of Counts II through VI. [CM/ECF dkts. 23 at 10-15; 23-3; 23-4.] In responding to the SEC's motion, Mr. Danker was required to identify "potentially determinative facts" and support them with admissible evidence or the SEC's supported facts "are admitted to exist without controversy." Local Rule 56.1(b), (e). He did not. Pro se litigants are subject to

the same waiver rules as represented parties. *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir. 1995). Because Mr. Danker has failed to identify any specific material fact in dispute or designate evidence rebutting the SEC's assertions, the Court concludes that the SEC is entitled to summary judgment on Counts II through VI. *See Waldridge v. Am. Hoechst Corp*., 24 F.3d 918, 924-24 (7th Cir. 1994) (affirming district court's grant of summary judgment against non-movant who failed to identify any material facts pursuant to Local Rule 56.1, which was "not a harmless technicality" but a "fatal" mistake).

## II. Undisputed Evidence on Count I

In Count I, the SEC alleges that Mr. Danker violated Section 5 of the Securities Act by selling and attempting to sell, through the use of the mail or interstate commerce, unregistered interests in JMS. 15 U.S.C. § 77e(a), (c). The SEC argues that summary judgment should be entered in its favor because "the facts supporting this claim are incontrovertible." [CM/ECF dkt. 23 at 15.]

To establish a prima facie Section 5 violation, the SEC must show that (1) the defendant offered to sell or sold a security, (2) did so through the use of mails or interstate commerce, and (3) no registration statement was filed or was in effect as to that security. *S.E.C. v. Cavanaugh*, 445 F.3d 105, 111 n.13 (2nd Cir. 2006); *SEC v. Opulentica*, 479 F. Supp. 2d 319, 327-28 (S.D.N.Y. 2007).

The SEC argues that all of the elements of a Section 5 violation have been established for three reasons. First, Mr. Danker was charged with and pled guilty to fraudulently offering and selling securities, including JMS, to the public. [CM/ECF dkts. 23-2; 23-3.] Second, Mr. Danker was charged with and pled guilty to mail fraud, thereby admitting to using the mail, television, newspapers, and other means of interstate commerce to solicit investors. [CM/ECF dkts. 23-2 at

6; 23-3.]  Third, it is undisputed that no registration statement was ever filed or in effect for JMS. [CM/ECF dkt. 23-1 at 4, 13.]

The Court agrees with the SEC that these undisputed facts establish that Mr. Danker violated Section 5 of the Securities Act.  Mr. Danker's failure to respond to the SEC's arguments, comply with Local Rule 56.1, and designate evidence showing a material issue of fact leads to one conclusion—that the SEC is entitled to summary judgment on Count I.

### III. SEC's Request for a Permanent Injunction

The SEC requests a permanent injunction under Section 20(b) of the Securities Act and Section 21(d)(1) of the Exchange Act.  [CM/ECF dkt. 23 at 17 (citing 15 U.S.C. § 77t(b) and 15 U.S.C. § 78u(d)(1).]  The scope of the requested injunction is unclear, although the SEC argues that it must be entered or "Danker will engage in future violations of the securities laws if he is ever again in a position to do so."  [CM/ECF dkt. 23 at 17.]

For the Court to enter an injunction, its order must 1) state the reasons why it is issued, 2) state its terms specifically, and 3) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.  Fed. R. Civ. Pro. 65(d).  The SEC has not submitted a proposed injunction for the Court to issue and it is unclear exactly what it seeks to permanently enjoin Mr. Danker from doing.  Moreover, it requests the permanent injunction to prevent Mr. Danker from engaging in future violations of the securities laws; however, it seems that the laws regulating the sale of securities do just that.  In other words, if Mr. Danker violates the securities laws again, he surely will face another criminal prosecution.

Based on the current record, the Court cannot find that the SEC is entitled to a permanent injunction at this time.  If the SEC intends to press its request, it must file a proposed injunction that meets the requirements of Rule 65 and a memorandum supporting why it is entitled to the

requested permanent injunction by January 10, 2011.  Mr. Danker will have until January 31, 2010 to file any objections to the SEC's proposed injunction, if he chooses to do so.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** the SEC's Motion for Summary Judgment as to Daniel G. Danker, to the extent that motion requests summary judgment on Counts I through VI of its Complaint.  [CM/ECF dkt. 22.]  The Court does not enter a permanent injunction at this time.  The SEC must file a proposed injunction that complies with Rule 65 and a supporting memorandum by **January 10, 2011** if it intends to continue to seek a permanent injunction.  Mr. Danker will have until **January 31, 2011** to file any objections to the SEC's proposed injunction, if he chooses to do so.

12/23/2010

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via Mail only:**

Constance Brooks-Kiefer
3306 S. Ransdell Street
Indianapolis, IN 46227-1152

Daniel G. Danker
1910 NW Grove Ave.
Topeka, KS 66606

Kenneth R. Payne
Register # 06422-028
FCI Seagoville
P.O. Box 90-00
Seagoville, TX 75159

**Distribution via ECF only:**

William Bock III

KROGER GARDIS & REGAS
wb@kgrlaw.com

Daniel J. Hayes
U.S. SECURITIES AND EXCHANGE COMMISSION
hayesdj@sec.gov

Dexter B. Johnson
MALLON & JOHNSON PC
djohnson@mallonandjohnson.com

Paul A. Montoya
SECURITIES & EXCHANGE COMMISSION
montoyap@sec.gov

Fred D. Scott Jr.
attyfredscott@sbcglobal.net

Kara Michelle Washington
SECURITIES & EXCHANGE COMMISSION
washingtonk@sec.gov

Dennis E. Zahn
VOYLES ZAHN PAUL HOGAN & MERRIMAN
dzahn@vzphmlaw.com