UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
|     *Plaintiff*, | ) ) | 1:00-cv-1265-JMS-TAB |
| *vs.* | ) ) ) | |
| KENNETH R. PAYNE, *et al.*, | ) | |
|     *Defendants.* | ) | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT AGAINST KENNETH R. PAYNE

Presently before the Court is Plaintiff United States Securities and Exchange Commission's ("SEC") Motion for Summary Judgment as to Defendant Kenneth R. Payne, who is representing himself.[1] [CM/ECF dkt. 19.][2] At this time, the Commission requests that the Court grant it summary judgment on liability and issue a permanent injunction against Mr. Payne from making misrepresentations of fact in connection with the sale or distribution of registered and unregistered securities.

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would, as a matter of law, conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue

---

[1] Mr. Payne practiced criminal law for more than fourteen years, [CM/ECF dkt. 20-4 at 5], before, according to the Indiana Roll of Attorneys, he was disbarred in 1986.

[2] Since the time this case was filed in 2000, the Court has implemented the CM/ECF electronic case management system. In September 19, 2005, the Court ordered that all future filings be through the CM/ECF system. [CM/ECF dkt. 1-1.] Filings made before that date are stored on the JAMS docket and will be cited to as "JAMS dkt. __", while filings made after that date will be cited to as "CM/ECF dkt. __."

for trial...against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial and cannot rely upon the mere allegations or denials in the pleadings. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 317. Moreover, the non-moving party must do more than just demonstrate a factual disagreement between the parties; it must demonstrate that the disputed factual issue is "material." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). Therefore, in what follows, the Court makes all reasonable factual inferences in favor of Mr. Chastain. *See* Fed. R. Civ. Pro. 56(c).

## BACKGROUND

The SEC filed this civil action against Mr. Payne in August 2000—one month before he was indicted for eleven counts of mail fraud and twenty counts of money laundering. *United States v. Payne*, 62 Fed. Appx. 648, 649 (7th Cir. 2003). Mr. Payne later pled guilty to five counts of mail fraud and to one count of money laundering. *Id.* at 650. The facts presented by the Seventh Circuit Court of Appeals on Mr. Payne's direct criminal appeal provide the context for the SEC's civil action against Mr. Payne:

> Kenneth Richard Payne was the founder and president of Heartland Financial Services, Inc. ("Heartland"), an investment and financial planning firm located in Indianapolis, Indiana. From 1991 until its closure in September 2000, Heartland sold various investment securities to more than 600 clients. As of January 1996, Payne managed most of the assets of Heartland as a classic Ponzi scheme. Payne and his subordinates received funds from investors by promoting certain investment packages and securities offered by the company, but the vast

majority of these funds were never invested. Instead, most of the investors' funds were deposited into an escrow bank account controlled by Heartland. The funds were then disbursed for the personal use of Payne and his colleagues, or to further the scheme by paying Heartland's operating expenses, travel for investors, or artificial returns on investments.

On August 10, 2000, the Securities and Exchange Commission filed a civil action to shut down Heartland's business operations.[3] Shortly thereafter, a receiver was appointed by the court to oversee the liquidation of Heartland's inventory/assets and to make distributions to the company's investors and creditors. On October 25, 2000, Payne was indicted for 11 counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342, and 20 counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (2). He was then charged by information on January 7, 2002 with one count of money laundering in violation of 18 U.S.C. § 1957. Payne entered into a plea agreement with the government that same day, pursuant to Fed. R. Crim. P. 11(e)(1)(C), pleading guilty to counts 1 through 5 of the indictment (mail fraud) and to the single count information (money laundering). The plea agreement provided for a maximum of 262 months' imprisonment, but reserved the question of financial loss to investors for determination by the district court at the sentencing phase . . . .

The district court . . . conclud[ed] that the loss caused by his criminal conduct exceeded $20 million. Based on this determination, the court sentenced Payne to 211 months' imprisonment.

*Id.* at 649-51. The Court also ordered Mr. Payne to pay $27,295,680.76 in restitution. [CM/ECF dkts. 20 at 2; 26 at 1.] The Seventh Circuit affirmed Mr. Payne's sentence on appeal. *Payne*, 62 Fed. Appx. at 649.

The SEC brought this civil enforcement action against Mr. Payne and others, alleging six counts of violations of the Securities Act, the Exchange Act, and Rule 10b-5.[4] [CM/ECF dkt. 20-1 at 13-19.] The Complaint alleges that Mr. Payne, working through Heartland and JMS Investment Group, LLC ("JMS"), violated and aided and abetted violations of the federal securities

---

[3] This case is the SEC's civil action.

[4] Mr. Payne did not file an answer to the SEC's Complaint and a default entry was entered in June 2001. [JAMS dkt. 110.] His subsequent motion to set aside the default entry was denied in December 2001. [JAMS dkt. 141.] Default judgment was never entered as to Mr. Payne. The SEC does not address how the default entry affects its motion, other than to argue that the facts alleged in its Complaint may not be contested. [CM/ECF dkt. 20 at 3 (citing *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994)).]

laws by defrauding more than 330 investors in thirteen states through the sale of investment opportunities. [CM/ECF dkt. 20-1 at 1, 6.] Specifically, the Complaint alleges that Mr. Payne offered and sold investment opportunities in (1) the initial public offerings of financial institutions and internet and technology companies represented by units of JMS; (2) shares in an offshore bank located in Belize; and (3) units of Heartland. [CM/ECF dkt. 20-1 at 6.]

Heartland was held out to be a broker-dealer and accepted money from customers to purchase unit investment trusts, money markets, and mutual funds. [*Id.*] Regardless of the investment opportunity selected by an investor, most of the investor's funds were deposited into a non-interest bearing bank account in the name of Lincoln Fidelity Escrow (the "Lincoln account"). [CM/ECF dkt. 20-1 at 6, 11.] From March 1999 through April 2000, $28,200,000 million was deposited into the Lincoln account. [CM/ECF dkt. 20-1 at 11.] Approximately $1,800,000 of this amount was used to purchase legitimate securities. [*Id.* at 12.]

In October 2010, the SEC moved for summary judgment against Mr. Payne. [CM/ECF dkt. 19.] The SEC asks the Court to grant summary judgment and enter a permanent injunction against Mr. Payne, enjoining him from making misrepresentations of fact in connection with the sale or distribution of registered and unregistered securities. [CM/ECF dkt. 28 at 3.]

## DISCUSSION

The SEC argues that it is entitled to summary judgment on Counts II through VI of its Complaint because Mr. Payne pled guilty to the underlying allegations and is collaterally estopped from relitigating those issues. The SEC argues that it is entitled to summary judgment on Count I because undisputed facts confirm the underlying allegations that Mr. Payne violated the Securities Act by selling and attempting to sell, through the use of the mail or interstate commerce, unregistered interests in JMS.

- 4 -

Mr. Payne filed a short response, arguing that the facts presented by the SEC exceed the content of the factual scenario to which Mr. Payne pled guilty, that any additional restitution would constitute double jeopardy, and that the permanent injunction the SEC requests is overbroad. [CM/ECF dkt. 26.] Mr. Payne did not designate any evidence in support of his response.

## I. Collateral Estoppel on Counts II through VI

Counts II through VI of the SEC's Complaint allege that Mr. Payne violated Section 17(a)(1) of the Securities Act (15 U.S.C. § 77q(a)(1)), Sections 17(a)(2) and (a)(3) of the Securities Act (15 U.S.C. § 77q(a)(2) and (a)(3)), Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)), Rule 10b-5 (17 C.F.R. § 240.10b-5), Section 15(a)(1) of the Exchange Act (15 U.S.C. § 78o(a)(1), Section 15(c)(1) of the Exchange Act (15 U.S.C. § 78o(c)), and Rule 15c1-2 (17 C.F.R. § 240.15c1-2). All of these provisions prohibit the use of manipulative and deceptive practices in the offer, sale, or delivery of any security or aiding and abetting manipulative and deceptive practices in the offer, sale, or delivery of any security. [CM/ECF dkt. 20 at 11, 12.]

Federal preclusion law determines the preclusive effect of a federal criminal proceeding. *Instituto Nacional De Comercializacion Agricola v. Continental Ill. Nat'l Bank & Trust Co.*, 858 F.2d 1264, 1271 (7th Cir. 1988); *SEC v. Black*, 2008 U.S. Dist. LEXIS 75812 (N.D. Ill. Sept. 24, 2008). In general, collateral estoppel precludes relitigating issues when 1) the party against whom the doctrine is asserted was a party to the earlier proceeding, 2) the issue was actually litigated and decided on the merits, 3) the resolution of the particular issue was necessary to the result, and 4) the issues are identical. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988) (citation omitted). In other words, "one fair opportunity to litigate an issue is enough." *Id.*

In the Seventh Circuit, collateral estoppel may be applied in civil cases to issues previously determined in a criminal conviction. *Appley v. West*, 832 F.2d 1021, 1026 (7th Cir. 1987). A criminal conviction based on a guilty plea "conclusively establishes for purposes of

subsequent civil proceedings that the defendant engaged in the criminal act for which he was convicted." *Nathan v. Tenna Corp.*, 560 F.2d 761, 763-64 (7th Cir. 1977); *see also Ermenc v. United States Internal Revenue Serv.*, 1992 Bankr. LEXIS 2512, *7-9 (N.D. Ind. 1992) ("The fact that the Debtor plead guilty to tax evasion . . . which resulted in a federal criminal conviction, rather than the criminal conviction arising out of a trial on the merits, does not preclude this Court from giving collateral estoppel effect to that criminal conviction in a subsequent [civil action].").

The United States submitted a ten-page factual basis at Mr. Payne's guilty plea hearing. [CM/ECF dkt. 20-5.] Mr. Payne stipulated to that factual basis at the plea hearing and confirmed on the record that he did not dispute its contents. [CM/ECF dkt. 20-4 at 33.] The essence of the factual basis is that Mr. Payne operated a stock fraud investment scheme from Heartland's offices, where he accepted large amounts of money purportedly for investment opportunities but actually deposited the majority of the funds into the Lincoln account. [CM/ECF dkt. 20-5 at 1-2.] The factual basis details the Atlas Income Fund, the JMS, BMC, and MDS Investment groups, and various fraudulent statements that were mailed to confirm transactions that never occurred. [*Id.* at 3-6.] Based on these facts, Mr. Payne pled guilty to four counts of mail fraud and one count of money laundering.

The SEC alleges that it is entitled to summary judgment on Counts II through VI of its Complaint because the facts underlying Mr. Payne's criminal convictions conclusively establish the elements of those counts. Mr. Payne does not directly respond to this argument but, instead, makes a conclusory assertion that "the factual scenario stated and discussed in [the SEC's] memorandum of law in support varies from and exceeds the content of the factual [s]cenario admitted in connection with [Payne's] plea." [CM/ECF dkt. 26 at 1.]

Mr. Payne does not identify which facts relied upon by the SEC allegedly exceed the content of the factual basis he stipulated to when he pled guilty. In responding to the SEC's motion, he was required to identify "potentially determinative facts" and support them with admissible evidence or the SEC's supported facts "are admitted to exist without controversy." Local Rule 56.1(b), (e). He did not. Pro se litigants are subject to the same waiver rules as represented parties. *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir. 1995). Because Mr. Payne has failed to identify any specific material fact in dispute and the factual basis underlying his guilty plea establishes the elements of Counts II through VI, the SEC is entitled to summary judgment on those counts. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924-24 (7th Cir. 1994) (affirming district court's grant of summary judgment against non-movant who failed to identify any material facts pursuant to Local Rule 56.1, which was "not a harmless technicality" but a "fatal" mistake).[5]

## II. Undisputed Evidence on Count I

In Count I, the SEC alleges that Mr. Payne violated Section 5 of the Securities Act by selling and attempting to sell, through the use of the mail or interstate commerce, unregistered interests in JMS. 15 U.S.C. § 77e(a), (c). The SEC argues that summary judgment should be entered in its favor because "the facts supporting this claim are incontrovertible." [CM/ECF dkt. 20 at 16.]

---

[5] Mr. Payne argues that because he was ordered to pay $27,295,68.76 in restitution, "any additional order relating to payment for the same investor losses by the same Court would work an unconstitutional double jeopardy as the defendant would be twice punished for the same conduct." [CM/ECF dkt. 26 at 1.] The SEC affirmatively notes, however, that although its Complaint requests disgorgement and civil penalties, it "seeks no disposition on those claims for relief at this time." [CM/ECF dkts. 20 at 17 n.3; 28 at 2.] Therefore, no double jeopardy concerns arise.

To establish a prima facie Section 5 violation, the SEC must show that (1) the defendant offered to sell or sold a security, (2) did so through the use of mails or interstate commerce, and (3) no registration statement was filed or was in effect as to that security. *S.E.C. v. Cavanaugh*, 445 F.3d 105, 111 n.13 (2nd Cir. 2006); *SEC v. Opulentica*, 479 F. Supp. 2d 319, 327-28 (S.D.N.Y. 2007).

The SEC argues that all of the elements of a Section 5 violation have been established for three reasons. First, Mr. Payne pled guilty and was convicted of fraudulently offering and selling securities, including JMS, to the public. [CM/ECF dkt. 20-5 at 4-5.] Second, Mr. Payne admitted to using the mail, television, newspapers, and other means of interstate commerce to solicit investors. [*Id.* at 7.] Third, it is undisputed that no registration statement was ever filed or in effect for JMS. [CM/ECF dkt. 20-1 at 4, 13.]

Mr. Payne does not respond to the SEC's argument, and he again fails to comply with Local Rule 56.1, which required him to respond to the SEC's asserted material facts by identifying potentially determinative factual disputes precluding summary judgment.[6] The Court agrees with the SEC that the undisputed facts establish that Mr. Payne violated Section 5 of the Securities Act and that the SEC is entitled to summary judgment on Count I.

**III. SEC's Request for a Permanent Injunction**

The SEC requests a permanent injunction under Section 20(b) of the Securities Act and Section 21(d)(1) of the Exchange Act. [CM/ECF dkt. 20 at 17 (citing 15 U.S.C. § 77t(b) and 15 U.S.C. § 78u(d)(1).] The scope of the requested injunction is unclear, except for the SEC's statement on reply that Mr. Payne "should be permanently enjoined, for example, making misre-

---

[6] To the extent Mr. Payne intended for his argument regarding the SEC's "factual scenario" exceeding the contents of his guilty plea, that argument fails for the reasons detailed above because Mr. Payne does not identify any material facts in dispute.

presentations of fact in connection with the sale of registered securities, so too should he be barred from making misrepresentations of fact in connection with the sale of unregistered securities." [CM/ECF dkt. 28 at 3.]

Mr. Payne argues that the "blanket, all inclusive request for relief in the form of a permanent injunction varies from and exceeds the scope of the allegations of the complaint" by including unregistered securities. [CM/ECF dkt. 26 at 2.] Although Mr. Payne acknowledges that he is "deeply sorry for his prior conduct" and he "would not object to the issuance of an injunction which enjoins the sale of unregistered securities," he emphasizes that he objects to an injunction enjoining the sale of "unregistered securities <u>which are not otherwise exempt</u> from registration." [CM/ECF dkt. 26 at 2 (original emphasis).]

For the Court to enter an injunction, its order must 1) state the reasons why it is issued, 2) state its terms specifically, and 3) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required. Fed. R. Civ. Pro. 65(d). The SEC has not submitted a proposed injunction for the Court to issue and it is unclear exactly what it seeks to permanently enjoin Mr. Payne from doing. Moreover, it requests the permanent injunction to prevent Mr. Payne from engaging in future violations of the securities laws; however, it seems that the laws regulating the sale of securities do just that. In other words, if Mr. Payne violates the securities laws again, he surely will face another criminal prosecution.

Based on the current record, the Court cannot find that the SEC is entitled to a permanent injunction at this time. If the SEC intends to press its request, it must file a proposed injunction that meets the requirements of Rule 65 and a memorandum supporting why it is entitled to the requested permanent injunction by January 10, 2011. Mr. Payne will have until January 31, 2011 to file any objections to the SEC's proposed injunction, if he chooses to do so.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** the SEC's Motion for Summary Judgment as to Kenneth R. Payne, to the extent that motion requests summary judgment on Counts I through VI of its Complaint. [CM/ECF dkt. 19.] The Court does not enter a permanent injunction at this time. The SEC must file a proposed injunction that complies with Rule 65 and a supporting memorandum by **January 10, 2011** if it intends to continue to seek a permanent injunction. Mr. Payne will have until **January 31, 2011** to file any objections to the SEC's proposed injunction, if he chooses to do so.

12/23/2010

_Hon. Jane Magnus-Stinson, Judge_
United States District Court
Southern District of Indiana

**Distribution via Mail only:**

Constance Brooks-Kiefer
3306 S. Ransdell Street
Indianapolis, IN 46227-1152

Daniel G. Danker
1910 NW Grove Ave.
Topeka, KS 66606

Kenneth R. Payne
Register # 06422-028
FCI Seagoville
P.O. Box 90-00
Seagoville, TX 75159

**Distribution via ECF only:**

William Bock III
KROGER GARDIS & REGAS
wb@kgrlaw.com

Daniel J. Hayes
U.S. SECURITIES AND EXCHANGE COMMISSION
hayesdj@sec.gov

Dexter B. Johnson
MALLON & JOHNSON PC
djohnson@mallonandjohnson.com

Paul A. Montoya
SECURITIES & EXCHANGE COMMISSION
montoyap@sec.gov

Fred D. Scott Jr.
attyfredscott@sbcglobal.net

Kara Michelle Washington
SECURITIES & EXCHANGE COMMISSION
washingtonk@sec.gov

Dennis E. Zahn
VOYLES ZAHN PAUL HOGAN & MERRIMAN
dzahn@vzphmlaw.com