UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br>     *Plaintiff*, <br>     *vs.* <br> KENNETH R. PAYNE, *et al.*, <br>     *Defendants.* | 1:00-cv-1265-JMS-TAB |

## **PERMANENT INJUNCTION AGAINST DEFENDANT KENNETH R. PAYNE**

Presently before the Court is Plaintiff United States Securities and Exchange Commission's ("SEC") Supplemental Motion for Permanent Injunction against Defendant Kenneth Payne. [Dkt. 32.]

## I.
### BACKGROUND

The SEC filed this civil action against Mr. Payne in August 2000—one month before he was indicted for eleven counts of mail fraud and twenty counts of money laundering. *United States v. Payne*, 62 Fed. Appx. 648, 649 (7th Cir. 2003). Mr. Payne later pled guilty to five counts of mail fraud and to one count of money laundering. *Id.* at 650. The facts presented by the Seventh Circuit Court of Appeals on Mr. Payne's direct criminal appeal provide the context for the SEC's civil action against Mr. Payne:

> Kenneth Richard Payne was the founder and president of Heartland Financial Services, Inc. ("Heartland"), an investment and financial planning firm located in Indianapolis, Indiana. From 1991 until its closure in September 2000, Heartland sold various investment securities to more than 600 clients. As of January 1996, Payne managed most of the assets of Heartland as a classic Ponzi scheme. Payne and his subordinates received funds from investors by promoting certain investment packages and securities offered by the company, but the vast majority of these funds were never invested. Instead, most of the investors' funds were deposited into an escrow bank account controlled by Heartland. The funds were then disbursed for the personal use of Payne and his colleagues, or to further

the scheme by paying Heartland's operating expenses, travel for investors, or artificial returns on investments.

On August 10, 2000, the Securities and Exchange Commission filed a civil action to shut down Heartland's business operations.[1] Shortly thereafter, a receiver was appointed by the court to oversee the liquidation of Heartland's inventory/assets and to make distributions to the company's investors and creditors. On October 25, 2000, Payne was indicted for 11 counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342, and 20 counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (2). He was then charged by information on January 7, 2002 with one count of money laundering in violation of 18 U.S.C. § 1957. Payne entered into a plea agreement with the government that same day, pursuant to Fed. R. Crim. P. 11(e)(1)(C), pleading guilty to counts 1 through 5 of the indictment (mail fraud) and to the single count information (money laundering). The plea agreement provided for a maximum of 262 months' imprisonment, but reserved the question of financial loss to investors for determination by the district court at the sentencing phase . . . .

The district court . . . conclud[ed] that the loss caused by his criminal conduct exceeded $20 million. Based on this determination, the court sentenced Payne to 211 months' imprisonment.

*Id.* at 649-51. The Court also ordered Mr. Payne to pay $27,295,680.76 in restitution. [Dkts. 20 at 2; 26 at 1.] The Seventh Circuit affirmed Mr. Payne's sentence on appeal. *Payne*, 62 Fed. Appx. at 649.

The SEC brought this civil enforcement action against Mr. Payne and others, alleging six counts of violations of the Securities Act, the Exchange Act, and Rule 10b-5.[2] [Dkt. 20-1 at 13-19.] The Complaint alleges that Mr. Payne, working through Heartland and JMS Investment Group, LLC ("<u>JMS</u>"), violated and aided and abetted violations of the federal securities laws by defrauding more than 330 investors in thirteen states through the sale of investment opportuni-

---

[1] This case is the SEC's civil action.

[2] Specifically, the SEC alleged violations of Section 17(a)(1) of the Securities Act (15 U.S.C. §77q(a)(1)), Sections 17(a)(2) and (a)(3) of the Securities Act (15 U.S.C. § 77q(a)(2) and (a)(3)), Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)), Rule 10b-5 (17 C.F.R. § 240.10b-5), Section 15(a)(1) of the Exchange Act (15 U.S.C. § 78o(a)(1), Section 15(c)(1) of the Exchange Act (15 U.S.C. § 78o(c)), and Rule 15c1-2 (17 C.F.R. § 240.15c1-2), and Section 5 of the Securities Act (15 U.S.C. § 77e(a), (c)). [Dkt. 20-1.]

ties. [Dkt. 20-1 at 1, 6.] Heartland was held out to be a broker-dealer and accepted money from customers to purchase unit investment trusts, money markets, and mutual funds. [*Id.* at 6.] Regardless of the investment opportunity selected by an investor, most of the investor's funds were deposited into a non-interest bearing bank account in the name of Lincoln Fidelity Escrow (the "Lincoln account"). [Dkt. 20-1 at 6, 11.] From March 1999 through April 2000, $28,200,000 million was deposited into the Lincoln account. [Dkt. 20-1 at 11.] Approximately $1,800,000 of this amount was used to purchase legitimate securities. [*Id.* at 12.]

The SEC moved for summary judgment against Mr. Payne in October 2010. [Dkt. 19.] The Court entered summary judgment against Mr. Payne on Counts I through VI of the SEC's Complaint but did not enter a permanent injunction at that time. [Dkt. 30.] The SEC filed a proposed permanent injunction in January 2011.

## II.
### PERMANENT INJUNCTION STANDARD

After proving a violation of federal securities laws, the SEC may obtain a permanent injunction against future violations if there is a reasonable likelihood of future violations. *SEC v. Church Extension of the Church of God*, 429 F. Supp. 2d 1045, 1048 (S.D. Ind. 2005); *see also SEC v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982). In making this evaluation, the Court considers the gravity of harm caused by the violation, the extent of the defendant's participation and the degree of scienter, whether the violations were isolated or recurring, the likelihood that a defendant's customary business activities might involve him in similar transactions again, the defendant's recognition of his culpability, and the sincerity of assurances from the defendant that he will not violate the law in the future. *Church Extension*, 429 F. Supp. 2d at 1048. The SEC need not prove that all of these factors point to a likelihood of future violation in order to obtain a permanent injunction. *Id.*

# III.
## DISCUSSION

Mr. Payne does not contest the SEC's ability to obtain a permanent injunction enjoining him from future securities law violations. [Dkt. 41 at 2 ("Defendant posits that the Court indeed has the discretionary authority to level any needed injunctive relief.").] Instead, he argues that the proposed injunction is unnecessary "overkill." [Dkt. 37 at 1.] The SEC argues that the factors the Court must consider "tip decidedly in favor of the injunction," given the egregiousness of Mr. Payne's actions and the gravity of harm he inflicted on investors. [Dkt. 40 at 2.] The Court will analyze each factor in turn.

### A. Balancing the Factors

The first factor considers the gravity of harm caused by the violation. The Court agrees with the SEC that Mr. Payne's violations of the securities laws were egregious. Over the course of several years, Mr. Payne directed a fraudulent scheme that victimized more than 330 investors in thirteen states. [Dkt. 30 at 4.] As a result of his actions, Mr. Payne pled guilty to multiple counts of mail fraud and one count of money laundering. He remains incarcerated until at least 2016 and has been ordered to pay $27,295,680.76 in restitution. [Dkts. 20 at 2; 26 at 1; 40-2 at 2.] Mr. Payne's fraudulent actions caused widespread harm to hundreds of people across the United States. The first factor favors issuing a permanent injunction.

The second factor considers the extent of the defendant's participation and the degree of scienter. Although no single factor is determinative, "the degree of scienter bears heavily on the decision to issue an injunction." *SEC v. Marker*, 427 F. Supp. 2d 583, 591 (M.D.N.C. 2006). Mr. Payne served as the founder and president of Heartland. [Dkt. 30 at 2.] After realizing that he could not compete with legitimate investment brokerage firms, Mr. Payne made a conscious decision to offer investment opportunities that paid higher rates of return than could be secured

to attract more customers. [Dkt. 20-5 at 1.] After being caught, Mr. Payne pled guilty to devising or participating in the scheme to defraud and doing so "knowingly with the intent to defraud." [Dkt. 20-3 at 1-2.] Mr. Payne's principal role in the Ponzi scheme and admission that he engaged in these acts knowingly shows a high degree of scienter, which favors issuing a permanent injunction.

The third factor considers whether the violations were isolated or recurring. Mr. Payne ran the Heartland Ponzi scheme for approximately four years from late 1996 until he was caught in August 2000. [Dkt. 20-5 at 1.] The significant length and continuous nature of Mr. Payne's fraudulent conduct shows a consistent and recurring intent to defraud investors. Therefore, the third factor favors entering a permanent injunction.

The fourth factor considers the likelihood that the defendant's customary business activities might involve similar transactions again. Mr. Payne has given the Court no assurances that he will not return to the securities business. Instead, in his response brief to summary judgment, Mr. Payne objected to the entry of permanent injunction insofar as it would enjoin him from offering or selling securities that were exempt from the registration requirements of securities laws. [Dkt. 26 at 2.] Mr. Payne asserted this objection again in response to the SEC's request for a permanent injunction. [Dkt. 37 at 3-4.][3] Mr. Payne's insistence that he should not be enjoined from dealing in certain types of securities suggests that he is contemplating returning to the securities business upon his release. This factor favors entering a permanent injunction.

---

[3] As the SEC points out, the proposed injunction enjoins future violations of the registration statute—Section 5 (15 U.S.C. § 77e)—and expressly incorporates any exemptions. [*See* dkt. 32-1 at 3 (enjoining Mr. Payne from violating Section 5 of the Securities Act "in the absence of any applicable exemption").] To the extent Mr. Payne suggests that federal securities laws do not apply to transactions involving unregistered securities that are exempt from registration, the SEC rightly notes that although a sale of an unregistered security may not violate Section 5, it still could violate other securities laws. [Dkt. 40 at 7 (citing the anti-fraud sections of the federal securities laws).]

The fifth factor considers a defendant's recognition of his culpability. Upon learning of his criminal investigation, Mr. Payne fled to the Netherlands with a false passport instead of accepting responsibility. [Dkt. 20-5 at 9.] He was later apprehended in an airport in Mexico when he traveled to Cancun to meet one of his girlfriends. [*Id.*; dkt. 40-3.] Moreover, instead of taking responsibility for his actions and responding to the merits of the SEC's request, Mr. Payne spends a significant portion of his brief critiquing the SEC's decision to continue to pursue him.[4] The Court acknowledges that Mr. Payne apologized to his victims at a status conference earlier this month and that he now wishes that he "could turn back time and undo the wrong I caused." [Dkt. 37 at 2.] But at the risk of sounding cliché, Mr. Payne's apology is simply too little, too late. Given his initial decision to flee the country and his superfluous comments regarding the actions of others, the Court finds that the fifth factor favors entering a permanent injunction.

The final factor considers the sincerity of the defendant's assurances that he will not violate the law in the future. Instead of assuring the Court that he will not violate the law, Mr. Payne quips, "How many penniless 70 year old multiple heart attack sufferers do you know [who] are out there running securities scams?" [Dkt. 31 at 1-2.] Additionally, Mr. Payne has a history of continuing to engage in illegal conduct despite being disciplined. Mr. Payne was disbarred from the practice of law in 1986 for cocaine use, engaging in illegal conduct involving moral turpitude, and neglecting a legal matter entrusted to him. [Dkt. 40-1.] Instead of changing his ways and engaging in a lawful profession, however, Mr. Payne began running an extensive

---

[4] For example, he protests that "if the Government is actually serious about doing something to protect the working men and women from securities fraud and economic manipulation, it will point its investigatory bulldogs to the individuals within Goldman Sachs, Merrill Lynch, AIG, and the country's overleveraged banks who conspired to cause our current economic debacle. Not gonna happen because that would take something more than cheap theatrics." [Dkt. 37 at 2-3.] The Court does not consider deterrence of a convicted felon from repeating fraudulent criminal activity cheap theatrics. Nor is the Court persuaded by Mr. Payne's attempt to divert attention from is own criminal wrongdoing.

Ponzi scheme. Mr. Payne's propensity for ignoring the law after serious discipline, combined with his lack of assurance that he will not violate the law in the future, does nothing to reassure the Court that he will conform his conduct to the applicable securities laws upon his release from prison. Therefore, the final factor also weighs in favor of entering a permanent injunction.

### B. Mr. Payne's Objections

Mr. Payne's main objection to the SEC's proposed permanent injunction is that it is unnecessary because he will be almost 70 years old when he is released from federal supervision.[5] [Dkts. 37 at 1-2; 41 at 1-2.] Mr. Payne does not cite any case law supporting his position that his advanced age is a mitigating factor in these circumstances. In fact, multiple courts have entered permanent injunctions against imprisoned defendants who will be in their sixties or seventies upon release. *See, e.g.*, *United States v. Blackwell*, 477 F. Supp. 2d 891, 912 (S.D. Ohio 2007) (granting permanent injunction despite fact that defendant would be 70 years old when released from prison); *Marker*, 427 F. Supp. 2d at 591 ("although [defendant] will be in his sixties when he is released from prison, this factor standing alone is not sufficient to show there is no reasonable likelihood that he will commit future violations of the securities laws"). Mr. Payne's age upon release is insufficient to overcome the six-factor analysis detailed above that favors entering a permanent injunction.

Mr. Payne also objects to the scope of the proposed permanent injunction because it binds his future business associates and allegedly ruins any chance he has "to make even a modest living." [Dkt. 37 at 3.] The language in the proposed injunction limits its enforcement to Mr. Payne's "agents, servants, employees, attorneys, and all persons in active concert or participation

---

[5] Mr. Payne will be 66 years old on the date of his anticipated release from prison. [Dkt. 40-2.] Mr. Payne asserts that he will be on supervised release for three years after his release from prison. [Dkt. 37 at 2.]

with them who receive actual notice . . . ." [Dkt. 32-1 at 3.] This language tracks Federal Rule of Civil Procedure 65(d)(2), which provides that injunction orders bind the parties; the parties' officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with them who receive actual notice. Mr. Payne does not address Rule 65(d)(2). Mr. Payne's argument that business partners served with a permanent injunction may not want to do business with him is insufficient to overcome the factors in favor of issuing a permanent injunction.

Finally, Mr. Payne objects to the scope of the language of the first paragraph of the proposed permanent injunction order, [dkt. 32-1 at 3], arguing that it does not clearly state what conduct is allowed and what conduct is proscribed, [dkt. 37 at 3-4]. The Court disagrees. The language at issue has been approved by this District. *See SEC v. Montana*, 2007 U.S. Dist. LEXIS 40490, *4-*5 (S.D. Ind. 2007). Moreover, putting aside the wisdom of Mr. Payne participating in the sale of <u>any</u> securities in the future, the proposed injunction only enjoins Mr. Payne (and his agents, employees, etc.) from engaging in future violations of the specific securities laws he already violated. The injunction does not preclude the sale of securities, regardless of registration, as long as the sale is made in full compliance with the law. [*See* dkt. 32 at 4 n. 3 (SEC admission that injunction does not prohibit offer or sale of securities made in compliance with law but, conversely, prohibits offer or sale of securities, both registered and unregistered, if such offer or sale would violate securities laws).] Because the language references the applicable statutes, incorporates applicable exemptions, and only enjoins Mr. Payne from violations thereof, Mr. Payne's objection is denied.

In sum, the record shows that Mr. Payne knowingly directed a fraudulent Ponzi scheme for approximately four years that harmed more than 330 investors in thirteen states. His argu-

ments suggest that he is contemplating returning to the securities business upon his release from prison. His past transgressions show that he has previously engaged in unlawful conduct despite being punished. The SEC has shown that there is a reasonable likelihood of future violations; therefore, the Court grants the SEC's request to enter the proposed permanent injunction against Mr. Payne.

## IV.
### CONCLUSION

Because there is a reasonable likelihood that Mr. Payne will engage in future violations of the securities laws he previously violated, the Court **GRANTS** the SEC's request to enter a permanent injunction against Mr. Payne. [Dkt. 32.] A permanent injunction will be issued accordingly.

02/18/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via Mail only:**

Constance Brooks-Kiefer
3306 S. Ransdell Street
Indianapolis, IN 46227-1152

Daniel G. Danker
1910 NW Grove Ave.
Topeka, KS 66606

Kenneth R. Payne
Register # 06422-028
FCI Seagoville
P.O. Box 9000
Seagoville, TX 75159

**Distribution via ECF only:**

William Bock III
KROGER GARDIS & REGAS
wb@kgrlaw.com

Daniel J. Hayes
U.S. SECURITIES AND EXCHANGE COMMISSION
hayesdj@sec.gov

Dexter B. Johnson
MALLON & JOHNSON PC
djohnson@mallonandjohnson.com

Paul A. Montoya
SECURITIES & EXCHANGE COMMISSION
montoyap@sec.gov

Fred D. Scott Jr.
attyfredscott@sbcglobal.net

Kara Michelle Washington
SECURITIES & EXCHANGE COMMISSION
washingtonk@sec.gov

Dennis E. Zahn
VOYLES ZAHN PAUL HOGAN & MERRIMAN
dzahn@vzphmlaw.com