UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br>     *Plaintiff*, <br><br> vs. <br><br> KENNETH R. PAYNE, *et al.*, <br>     *Defendants*. | 1:00-cv-1265-JMS-TAB |

### **PERMANENT INJUNCTION AGAINST DEFENDANT DANIEL G. DANKER**

Presently before the Court is Plaintiff United States Securities and Exchange Commission's ("SEC") Supplemental Motion for Permanent Injunction against Defendant Daniel G. Danker. [Dkt. 33.]

### I.
#### BACKGROUND

In August 2000, the SEC filed this civil action against multiple individuals, including Mr. Danker, because of a Ponzi scheme operated through Heartland Financial Services, Inc. ("Heartland") in the late 1990s. *Knauer v. Jonathon Roberts Fin. Group, Inc.*, 348 F.3d 230, 231 (7th Cir. 2003). Mr. Danker was Heartland's vice president and office manager. *Id.* The facts presented by the Seventh Circuit Court of Appeals regarding a lawsuit between Heartland's court-appointed receiver and several broker dealers provides the context for the SEC's civil action against Mr. Danker:

> Heartland Financial Services, Inc., and JMS Investment Group, LLC, operated a Ponzi scheme in the late 1990s that collected over $ 60 million from hundreds of investors. In August 2000, in connection with a Securities and Exchange Commission action against individuals and entities involved in the Ponzi scheme, the district court appointed James A. Knauer as receiver for Heartland and JMS.
>
> ***
>
> Kenneth R. Payne founded Heartland Financial Services, Inc., in January 1991 and served as its president. From 1994 to as late as August 2001, Heartland,

> together with JMS Investment Group, LLC, which was founded in 1997, and other affiliated companies, engaged in a massive fraud, holding themselves out as brokerage, insurance and estate planning firms and raising millions of dollars through fraudulent sales of securities. Working with Payne in this business were Daniel Danker, Heartland's vice president and office manager, Johann M. Smith, founder, manager and attorney for JMS, and Constance Brooks-Kiefer, an administrative assistant who worked for both JMS and Heartland. Their operation was a classic Ponzi scheme. Investors were promised extraordinarily high rates of return, which in the beginning were realized, for the purpose of encouraging greater reinvestment. By 1998, Heartland had over 700 clients, who had invested $ 22.6 million with the company. Between December 1997 and December 1999, JMS raised $ 18.5 million from over 250 investors. Altogether, the two companies and their affiliates collected over $ 60 million. In reality, Heartland and its affiliates did not invest most of the funds at all, but Payne and his colleagues withdrew and spent the money for their own personal benefit.
>
> ***
>
> On August 10, 2000, the SEC moved for, and the district court granted, a temporary restraining order against Payne and Danker.[1] As part of the proceedings, the district court removed Payne, Danker, Smith and Brooks-Kiefer from control of Heartland and JMS and appointed James A. Knauer as receiver for the two companies.

*Knauer*, 348 F.3d at 231-32.

In March 2001, Mr. Danker pled guilty to two counts of mail fraud and one count of money laundering. [Dkt. 23-3.] In July 2001, he was sentenced to 71 months in prison and ordered to pay $27,295,680.76 in restitution. [Dkt. 23-4.]

In this civil enforcement action, the SEC alleges six counts of violations of the Securities Act, the Exchange Act, and Rule 10b-5 against Mr. Danker. [Dkt. 23-1 at 13-19.] The Complaint alleges that Mr. Danker, working through Heartland and JMS Investment Group, LLC ("JMS"), violated and aided and abetted violations of the federal securities laws by defrauding more than 330 investors in thirteen states through the sale of investment opportunities. [Dkt. 23-1 at 1, 6.] Specifically, the Complaint alleges that Mr. Danker offered and sold investment opportunities in (1) the initial public offerings of financial institutions and internet and technology

---

[1] This is the SEC's civil action.

companies represented by units of JMS; (2) shares in an offshore bank located in Belize; and (3) units of Heartland. [Dkt. 23-1 at 6.]

Heartland was held out to be a broker-dealer and accepted money from customers to purchase unit investment trusts, money markets, and mutual funds. [*Id.*] Regardless of the investment opportunity selected by an investor, most of the investor's funds were deposited into a non-interest bearing bank account in the name of Lincoln Fidelity Escrow (the "Lincoln account"). [Dkt. 23-1 at 6, 11.] From March 1999 through April 2000, $28,200,000 million was deposited into the Lincoln account. [Dkt. 23-1 at 11.] Approximately $1,800,000 of this amount was used to purchase legitimate securities. [*Id.* at 12.]

The SEC moved for summary judgment against Mr. Danker in October 2010. [Dkt. 22.] The Court entered summary judgment against Mr. Danker on Counts I through VI of the SEC's Complaint but did not enter a permanent injunction at that time. [Dkt. 29.] The SEC filed a proposed permanent injunction in January 2011.

## II.
### PERMANENT INJUNCTION STANDARD

After proving a violation of federal securities laws, the SEC may obtain a permanent injunction against future violations if there is a reasonable likelihood of future violations. *SEC v. Church Extension of the Church of God*, 429 F. Supp. 2d 1045, 1048 (S.D. Ind. 2005); *see also SEC v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982). In making this evaluation, the Court considers the gravity of harm caused by the violation, the extent of the defendant's participation and the degree of scienter, whether the violations were isolated or recurring, the likelihood that a defendant's customary business activities might involve him in similar transactions again, the defendant's recognition of his culpability, and the sincerity of assurances from the defendant that he will not violate the law in the future. *Church Extension*, 429 F. Supp. 2d at 1048. The SEC

need not prove that all of these factors point to a likelihood of future violation in order to obtain a permanent injunction. *Id.*

### III.
### DISCUSSION

The SEC requests that the Court enter the proposed permanent injunction against Mr. Danker because there is a reasonable likelihood of future violations. Mr. Danker did not file a response or objection to the SEC's request for a permanent injunction.

The first factor considers the gravity of harm caused by the violation. The Court agrees with the SEC that Mr. Danker's violations of the securities laws were egregious. Over the course of several years, Mr. Danker was involved in a fraudulent scheme that victimized more than 330 investors in thirteen states. [Dkt. 29 at 3.] As a result of his actions, Mr. Danker pled guilty to two counts of mail fraud and one count of money laundering. [Dkt. 23-3.] He was sentenced to 71 months in prison and ordered to pay $27,295,680.76 in restitution. [Dkt. 23-4.] Mr. Danker's fraudulent actions caused widespread harm to hundreds of people across the United States. The first factor favors issuing a permanent injunction.

The second factor considers the extent of the defendant's participation and the degree of scienter. Although no single factor is determinative, "the degree of scienter bears heavily on the decision to issue an injunction." *SEC v. Marker*, 427 F. Supp. 2d 583, 591 (M.D.N.C. 2006). Mr. Danker was extensively involved with the fraudulent scheme as the Vice-President of Heartland. [Dkt. 29 at 2, 3.] After being caught, Mr. Danker pled guilty to "knowingly" orchestrating the fraudulent scheme. [Dkt. 23-3 at 1.] Mr. Danker's principal role in the Ponzi scheme and his admission that he engaged in these acts knowingly shows a high degree of scienter, which favors issuing a permanent injunction.

The third factor considers whether the violations were isolated or recurring. Mr. Danker was instrumental in the Heartland Ponzi scheme for approximately four years from late 1996 until he was caught in August 2000. [Dkt. 29 at 2.] The significant length and continuous nature of Mr. Danker's fraudulent conduct shows a consistent and recurring intent to defraud investors. Therefore, the third factor favors entering a permanent injunction.

The fourth factor considers the likelihood that the defendant's customary business activities might involve similar transactions again. To the SEC's knowledge, Mr. Danker has already been released from prison and has made no indication that he will refrain from engaging in the securities business. [Dkt. 33 at 4.] Given the significant financial gain Mr. Danker obtained from his previous securities scheme, there is a reasonable likelihood that he will engage in the securities business again. The fourth factor favors issuing a permanent injunction.

The fifth factor considers a defendant's recognition of his culpability. Other than Mr. Danker's guilty plea, the Court has no knowledge of Mr. Danker's recognition of culpability. Therefore, this factor is neutral or favors Mr. Danker.

The final factor considers the sincerity of the defendant's assurances that he will not violate the law in the future. There is no evidence that Mr. Danker has made any assurances that he will not violate the law in the future. Therefore, this factor is neutral or favors the issuance of an injunction.

In sum, the record shows that Mr. Danker knowingly directed a fraudulent Ponzi scheme for approximately four years that harmed more than 330 investors in thirteen states. A majority of the six factors show that there is a reasonable likelihood of future violations. Therefore, the Court grants the SEC's request to enter the proposed permanent injunction against Mr. Danker.

As previously stated, Mr. Danker does not object to the entry or the form of the proposed permanent injunction.

## IV.
### CONCLUSION

Because there is a reasonable likelihood that Mr. Danker will engage in future violations of the securities laws, the Court **GRANTS** the SEC's request to enter a permanent injunction against Mr. Danker. [Dkt. 33.] A permanent injunction will be issued accordingly.

02/18/2011

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via Mail only:**

Constance Brooks-Kiefer
3306 S. Ransdell Street
Indianapolis, IN 46227-1152

Daniel G. Danker
1910 NW Grove Ave.
Topeka, KS 66606

Kenneth R. Payne
Register # 06422-028
FCI Seagoville
P.O. Box 9000
Seagoville, TX 75159

**Distribution via ECF only:**

William Bock III
KROGER GARDIS & REGAS
wb@kgrlaw.com

Daniel J. Hayes
U.S. SECURITIES AND EXCHANGE COMMISSION

hayesdj@sec.gov

Dexter B. Johnson
MALLON & JOHNSON PC
djohnson@mallonandjohnson.com

Paul A. Montoya
SECURITIES & EXCHANGE COMMISSION
montoyap@sec.gov

Fred D. Scott Jr.
attyfredscott@sbcglobal.net

Kara Michelle Washington
SECURITIES & EXCHANGE COMMISSION
washingtonk@sec.gov

Dennis E. Zahn
VOYLES ZAHN PAUL HOGAN & MERRIMAN
dzahn@vzphmlaw.com